**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 17-cv-60528-BLOOM/Valle**

NAWAL M. HASSOUN,

Plaintiff/Counter-Defendant,

v.

RELIASTAR LIFE INSURANCE
COMPANY, a Minnesota company,

Defendant/Counter-Plaintiff.
_____

RELIASTAR LIFE INSURANCE
COMPANY, a Minnesota company,

      Third-Party Plaintiff,

v.

LABEEB HASSOUN, individually,
KAYRIA T. HASSOUN, individually,
and JAMEEL M. HASSOUN, individually,

      Third-Party Defendant.
_____/


**OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT,**
**MOTION FOR DISCHARGE, AND MOTIONS TO STRIKE**

    **THIS CAUSE** is before the Court upon several motions filed by the parties. Plaintiff

Nawal M. Hassoun ("Plaintiff" or "Nawal")[1] filed initially filed her complaint in state court

_____

[1] Because several parties to this action have the same surname, the Court will refer to the parties
by their given names as required for clarity.

seeking declaratory judgment. ECF No. [1-2]. Defendant and Third-Party Plaintiff, Reliastar Life Insurance Company ("Reliastar")[2] timely removed. *See* ECF No. [1].

On August 15, 2017, Reliastar filed its operative Second Amended Counterclaim and Third-Party Complaint in Interpleader, interpleading Plaintiff; Labeeb Hassoun ("Labeeb"), now voluntarily dismissed from the action; and the Third Party Defendants Kayria T. Hassoun and Jameel M. Hassoun ("Kayria" and "Jameel," together, the "Third Party Defendants"). ECF No. [54] ("Interpleader Complaint"). In the Interpleader Complaint, Reliastar seeks an order requiring Nawal, Labeeb, Kayria, and Jameel to interplead their rights, discharging Reliastar from all liability, awarding Reliastar attorneys' fees, and dismissing it from the action. *Id.* at 5–6.

Plaintiff filed her operative Second Amended Complaint on September 13, 2017 against Reliastar and the Third Party Defendants. ECF No. [64]. Plaintiff's Second Amended Complaint asserts a sole cause of action for declaratory judgment that (1) insurance policy in question was in full force and effect at the time of the insured Walid Hassoun's death; (2) that Walid Hassoun changed the beneficiary under the Policy to the Plaintiff; and (3) that Plaintiff is the beneficiary under the Policy. Plaintiff also seeks an award of attorneys' fees. *Id.* at 6–7.

Six motions are currently pending before the Court related to the operative pleadings as follows:

---

[2] Throughout the relevant time period, Reliastar has been subject to several name and ownership changes. *See* Deposition of Mary Moerbitz, October 26 2017, 30(b)(6) Witness for Reliastar ("Moerbitz Tr.") at 10–11. For simplicity, the Court will use "Reliastar" to refer to the current entity and any relevant predecessor entities.

1. Reliastar's Motion for Discharge from Action and Permanent Injunction from Future Claims and Incorporated Memorandum of Law, ECF No. [77];

2. Third-Party Defendants' Motion for Final Summary Judgment, ECF No. [82];

3. Reliastar's Motion for Summary Judgment and Memorandum of Law, ECF No. [84];

4. Plaintiff's Cross-Motion for Summary Judgment, ECF No. [87];

5. Third-Party Defendants' Motion to Strike Statement of Material Facts Pursuant to Local Rule 56.1(a), ECF No. [96];

6. Reliastar's Motion to Strike Declarations of Dr. Mustafa Hamed [D.E. 86-11] and Mahiatab Nayef Cheblac [D.E. 86-12] and Affidavit of Nawal Hassoun [D.E. 86-13], ECF No. [104]

The parties filed oppositions to each motion, and for all motions except Reliastar's Motion to Strike, ECF. No. [104], the movants each filed replies. All six motions are ripe for review.

## I.     FACTUAL BACKGROUND[3]

### A. The Life Insurance Policy

On January 18, 2016 Walid Hassoun ("Walid" or the "Insured") passed away in Tripoli, Lebanon, leaving behind a $130,000 employer-sponsored life insurance policy under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq. See* ECF Nos. [85] ¶ 2; [86] ¶ 14; [86-5], [90-5], and [92-4] ("Death Certificate"); [86-11] ¶ 2; [90] ¶ 14; [92]

---

[3] In support of their respective motions for summary judgment, the parties have submitted statements of material facts, ECF Nos. [83], [85], and [86], and have also filed opposing statements of material facts, ECF Nos. [90], [92], [98], and [101]. Based on these statements, as well as the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

¶ 14.   The parties agree that the entirety of the insurance policy at issue contains three separate documents: a two page document entitled Schedule of Benefits, a booklet also entitled Schedule of Benefits ("Schedule of Benefits Booklet"), and a handwritten form which appears to memorialize the general terms of the group policy held between Walid's employer, the Law Companies Group, and Reliastar. *See* ECF Nos. [9-1], [22-1], [54-1], [86-1], [90-1], [92-1] ("Policy").  The Schedule of Benefits Booklet states that the Policyholder and Administrator is the Law Companies Group. *Id.* [4]

Under the section entitled "Life Insurance," the Policy explains what a beneficiary is, how to change the beneficiary, and to whom the Policy proceeds are paid.  The relevant contract terms state in full:

> **Beneficiary**
>
> **The beneficiary** is named to receive the proceeds to be paid at your death. You may name one or more beneficiaries. You cannot name the Policyholder as beneficiary.
>
> You may name, add, or change beneficiaries by written request as described below. You may also choose to name a beneficiary that you cannot change without his or her consent. This is an **irrevocable beneficiary.**
>
> **How do you name, add, or change beneficiaries?**

_____

[4] Copies of Policy have been filed on the docket at ECF Nos. [9-1], [22-1], [54-1], [86-1], [90-1], and [92-1].  The handwritten form was only attached to those versions filed by Reliastar. *Cf.* ECF No. [9-1], [22-1], [54-1] *with* [86-1]. [90-1], and [92-1].  The Court also notes that the handwritten form appears to state that the Planholder is Law Engineering, Inc., not the Law Companies, Inc., Walid's former employer.  ECF Nos. [86] ¶ 1, [98] ¶ 1, [101] ¶ 1.  In addition, the Schedule of Benefits Booklet has numbered pages, many of which are missing from all copies presented to the Court.  For example, the pagination jumps from page 3 to pages 8 (*see* ECF No, [54-1] at 4) and from page 25 to page 52 (*see id.* at 13).  However, no party disputes the completeness or accuracy of the Policy filed with the Court, and the Court will treat it as such.

>You can name, add, or change beneficiaries by written request if all of these are true:
>
>• Your coverage is in force.
>• We have written consent of all irrevocable beneficiaries.
>• You have not assigned the ownership of your insurance. The rights of an assignee are described under the Assignment section.
>
>All requests are subject to our approval. A change will take effect as of the date it is signed but will not affect any payment we make or action we take before receiving your notice.
>
>**To whom do we pay proceeds?**
>We pay proceeds to the beneficiary. If there is more than one beneficiary, each receives an equal share, unless you have requested another method in writing. To receive proceeds, a beneficiary must be living on the earlier of the following dates:
>
>• The date we receive proof of your death.
>• The 10th day after your death.
>
>If there is no eligible beneficiary or if you did not name one, we pay proceeds to the persons listed below in order. The person must be living on the tenth day after your death:
>
>1. Your spouse.
>2. Your children.
>3. Your parents.
>4. Your estate.

ECF No. [54-1] at 11 (emphasis in original). The Definitions section defines "written, in writing" as "signed and dated and received at our Home Office in a form we accept." *Id.* at 16. The parties dispute whether the Policy requires that changes to a beneficiary require affirmative approval by Reliastar. ECF Nos. [83] ¶ 5–6; [85] ¶ 3; [86] ¶ 2; [90] ¶ 2; [92] ¶ 2; [98] ¶ 4.

Walid enrolled in the policy in the fall of 1995 using a form entitled "1996 Enrollment Form," naming his wife, Chafnaze Chablak, as the primary beneficiary and his brother, Labeeb Hassoun, as the contingent beneficiary. *See* ECF No. ECF Nos. [9-2], [22-2], [54-2], [86-2], [90-2], and [92-2] at 1 ("1996 Enrollment Form"); *see also* ECF Nos. [85] ¶ 4; [86] ¶ 7; [90] ¶ 7;

[92] ¶ 7; [98] ¶ 7; [101] ¶ 7.  The 1996 Enrollment Form is dated October 22, 1995 and bears a signature which reads "Walid Hassoun."  ECF No. [54-2] at 1.  The beneficiary form also bears a stamp which indicates it was received by Reliastar on July 18, 1996.  *Id.*

### B.  The 2006 Beneficiary Form

On December 20, 2006, a beneficiary designation form was received by Reliastar ("2006 Beneficiary Form").  ECF No. [52-2], [54-3], [86-3], [90-3], and [92-3]; *see also* ECF Nos. [85] ¶ 8; [86] ¶ 8; [98] ¶ 8; [101] ¶ 8; [82-1], [83-1], and [86-10], Moerbitz Tr. at 126–27.  The 2006 Beneficiary Form named four beneficiaries: Third Party Defendants (Walid's mother and brother) and Amal M. Hassoun and Siam M. Hassoun (two of Walid's sisters, now deceased). ECF No. [54-3] at 1; *see also* ECF Nos. [85] ¶ 5; [86] ¶ 8; [90] ¶ 8; [92] ¶ 8; [98] ¶ 6.  The form is dated November 28, 2006 in Plantation, Florida; bears a signature which is dissimilar to the 1996 Enrollment Form; and is notarized.  ECF Nos. [54-3] at 1; [85] ¶ 6; [86] ¶ 2; [98] ¶ 24.  The instructions on the form to the insured state: "Type or print legibly in ink. Sign and date the form. Return the original and retain a copy for your records."  ECF No. [54-3] at 1. The directions to the Plan Administrator state: "Send the completed form to the insurance company for approval if any of the following apply: 1) The wording used in the request differs from the examples given on the reverse side; 2) The policy/certificate has been assigned; 3) The previous beneficiary is irrevocable; or 4) The coverage is under an individual policy. . . . For forms that do not require insurance company approval, retain a copy of the approved form with the insured's records." *Id.*

The 2006 Beneficiary Form contains a handwritten notation that Walid was "on wavier," meaning that Reliastar had determined he was completely disabled and no longer needed to pay premiums to maintain the Policy.  *See* Moerbitz Tr. at 48, 67–68; [86] ¶ 5; [98] ¶ 5. Moerbitz

testified that it is Reliastar's policy to maintain all change of beneficiary forms for insureds that are "on waiver." *See* Moerbitz Tr. at 67–68; ECF Nos. [86] ¶ 6 and [101] ¶ 6.[5] By way of letter dated January 8, 2007, Reliastar acknowledged receipt of the 2006 Change of Beneficiary Form. ECF No. [54-4]; *see also* Moerbitz Tr. at 130–31; ECF Nos. [83] ¶ 4; [85] ¶ 7; [86] ¶ 8; [98] ¶ 8, 25; [101] ¶ 8, 16. Specifically, the letter states: "We have received and processed your request to change the beneficiary of your life insurance coverage." ECF No. [54-4].

### C. The 2008 Power of Attorney

On November 22, 2008, Walid granted a power of attorney to Mahitab Nayef Cheblac (also spelled Shablak), his sister-in-law, "in order for [her] to help him with his affairs." *See* ECF No. [86-12], Declaration of Mahitab Nayef Cheblac (Nayef Aff.) ¶ 2; *id.* at 4–8, Nayef Aff. Ex. 1, General Absolute Comprehensive Power of Attorney (Original and Certified Translation) ("Power of Attorney"); *see also* ECF No. [86] ¶ 11. Nayef avers that she "used to talk to him [Walid] daily and [] used to see him every month so that [she] could help him take care of his needs." *Id.* ¶ 2. She states that "[d]ue to his medical condition, he could not move his hands, so he could not use his hands to eat or write. He could not sign documents with a written signature. He told me that his [sic] used his fingerprint or thumbprint to sign documents." *Id.*; *see also* ECF No. [86] ¶ 10. The original, untranslated version of the Power of Attorney bears a mark on each page which appears to be a thumbprint. *Id.* at 6, 7, 8. Nayef avers that this mark is Walid's

---

[5] *But see* [98] ¶ 5. The Third Party Defendants dispute Reliastar's characterization of its own duties to maintain the forms for an insured that is "on waiver," but cite no facts to support this contention.

thumbprint, and the certified translation of the document ends stating "[t]he mandator Walid Mohamad Hassoun Signs as follows (signature thus)." ECF No. [86-12] ¶ 2.[6]

### D. Walid's Diagnosis

According to Dr. Mustafa Hamed, Walid's treating physician from 2013 to 2016, Walid was diagnosed with amyotrophic lateral sclerosis ("ALS") in May of 2013. ECF No. [86-11], Affidavit of Dr. Mustafa Hamed dated November 25, 2017 ("Hamed Aff.") ¶ 2; *id.* at 3–4, Hamed Aff. Ex. 1, Neurology Department Report dated May 18, 2016 ("I confirm that my patient Walid Hassoun was affected by amyotrophic lateral sclerosis (ALS)."); *see also* ECF No. [86] ¶ 9; [90] ¶ 9; [92] ¶ 9. Based on his role as treating physician to Walid, Dr. Hamed opines that "[d]ue to his condition, Walid Hassoun was unable to move his hands and so he could not write or use his hands to eat." ECF No. [86-11] ¶ 3. Dr. Hamed further avers that Walid told him that because of his condition, Walid used his fingerprint to sign documents. *Id.* at 3–4, [86-11] Hamed Aff. Ex. 1 ("During the course of his disease he was unable to move his hands (writing, eating), because what [sic] he was using his fingerprint for legal issues").[7]

---

[6] Neither Reliastar nor Third Party Defendants have introduced any evidence to create an issue of fact regarding the 2008 Power of Attorney.

[7] Neither Reliastar nor Third Party Defendants have introduced any evidence to create an issue of fact regarding the statements in Dr. Hamed's affidavit. The Third Party Defendants admit that Walid was diagnosed with ALS and could not use his hands, and do not raise an issue of fact as to the remainder of the statements in the Hamed Affidavit. ECF No. [98] ¶ 9. Rather, on summary judgment, Third Party Defendants object to the statement on evidentiary grounds that his statements are both hearsay and immaterial. *Id.* Similarly, Reliastar does not dispute the facts contained in the Hamed Affidavit, but rather objects to them based on hearsay. ECF No. [101] ¶ 9. However, as explained further in addressing Reliastar's and Third Party Defendants' Motions to Strike and the Motions for Summary Judgment, *infra*, the Court may consider on a motion for summary judgment any facts in the record which may be reduced to an admissible form for trial—such as the live testimony of Dr. Hamed. *Jones v. UPS Ground Freight*, 683

### E. The 2013 Beneficiary Form

In 2013, Walid lived in Tripoli "in his own house" with his mother, this brother, two nurses, and a maid. Nayef Aff., ECF No. [86-12] ¶ 3; Nawal Aff., ECF No. [86-13] ¶ 3; *see also* ECF No. [86] ¶ 10. On August 24, 2013 Walid traveled to Nayef's home for a weekend visit. Nayef Aff., ECF No. [86-12] ¶ 4; *see also* ECF No. [86] ¶ 10. Walid brought a blank beneficiary designation form to the visit. While Nayef and Walid were alone in the kitchen and Nayef was helping Walid eat his lunch, Walid told Nayef he wanted to change the beneficiaries under his life insurance policy and instructed Nayef to help him complete the form. ECF No. [86-12] ¶ 4; *see also* ECF No. [86] ¶ 10. Nayef avers that Walid told her to list Plaintiff and his niece as the beneficiaries. ECF No. [86-12] ¶ 4; *see also* ECF No. [86] ¶ 10. Nayef filled out the form accordingly. ECF No. [86-12] ¶ 4.

According to Nayef: "After I filled in the form and listed the beneficiaries, I saw Walid Hassoun place his fingerprint on the beneficiary designation form. He placed the fingerprint on the form in front of me after I filled out the form pursuant to his instructions." *Id.* ¶ 6; *see also* ECF No. [86] ¶ 11. Nayef further states that Walid used his thumbprint because he could not move his arms or hands anymore. ECF No. [86-12] ¶ 6; *see also* ECF No. [86] ¶ 10.

After Walid placed his thumbprint on the form, Walid instructed Nayef to send the completed beneficiary form, ECF Nos. [22-3], [54-5], [86-4], [90-4], and [92-4] ("2013 Beneficiary Form"), to the United States via Aramex to Walid's uncle in Florida. ECF No. [86-

---

F.3d 1283, 1293–94 (11th Cir. 2012) (citing *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)). Neither Reliastar nor Third Party Defendants have set forth any record evidence for the Court to consider in contravention to the Hamed Affidavit. Accordingly, the Court will treat the Hamed Affidavit as undisputed.

12] ¶ 7; *see also* ECF No. [86] ¶ 12. Walid further instructed Nayef to tell the uncle, who also had a power of attorney, to send the forms to Reliastar. ECF No. [86-12] ¶ 4; *see also* ECF No. [86] ¶ 12. Nayef states that she told Walid's uncle to mail the 2013 Beneficiary Form to Reliastar, and later confirmed with the uncle that he had received the 2013 Beneficiary Form and had forwarded it to the insurance company. *Id.*; *see also* ECF No. [86] ¶ 12.[8]

At some point after August 2013, Nawal traveled to Tripoli, Lebanon. While visiting with Walid, Walid informed Nawal that "he had placed [her] as a beneficiary on his life insurance policy." Nawal Aff., ECF No. [86-13] ¶ 3. Nawal avers that "[g]iven that he signed the 2013 Beneficiary Form in August of 2013, our meeting had to occur after that date because he told me that he had already made me the beneficiary. I did not know anything else about his policy." *Id.* She further states that Walid was "completely disabled due to his medical condition" and that he "could not move his hands or write using his hands," and that "[h]e used his finger print or thumbprint to sign documents." *Id.* ¶ 4.

On October 16, 2013, Reliastar received the 2013 Beneficiary Form. ECF Nos. [86] ¶ 13; [90] ¶ 13; [92] ¶ 13; [98] ¶ 13; [101] ¶ 13. As described in the Nayef and Nawal Affidavits, the 2013 Beneficiary Form names Plaintiff, Nawal Hassoun, as the beneficiary and Rima Hassoun, Walid's niece ("Rima"), as the contingent beneficiary. ECF No. [54-5]. The 2013 Beneficiary Form also notes that Walid is "on waiver." *Id.* The 2013 Beneficiary Form

---

[8] Both Reliastar and Third Party Defendants question whether the mark on the 2013 Beneficiary form is a thumbprint and whether it was made intentionally by Walid. However, neither has introduced any record evidence to create an issue of fact beyond their speculation or conclusory denials. In addition, like the Hamed Affidavit, Reliastar and Third Party Defendants also object to the Nayef Affidavit on evidentiary grounds. Again, because the content of the affidavit can be reduced to admissible testimony—namely the testimony of Nayef—the Court may consider these facts on summary judgment. *See Jones*, 683 F.3d at 1293–94 (citing *Macuba*, 193 F.3d at 1322.)

contains identical directions to both the insured and plan administrator as the 2006 Beneficiary Form. *Id.*

The 2013 Beneficiary Form was never processed by Reliastar. ECF Nos. [85] ¶ 10; [86] ¶ 13; [92] ¶ 13; [98] ¶ 13; [101] ¶ 13. The form was initially received by the Waiver Department—the wrong department—and was never forwarded to the Policy Service Department for processing due to "human error." Moerbitz Tr. at 41; *see also* ECF Nos. [83] ¶ 10; [86] ¶ 13; [101] ¶ 13. Reliastar did not review the form, did not accept or deny the 2013 Beneficiary Form, and instead misfiled it electronically within the Waiver Department's folders on its "WISE" document management and workflow system. ECF Nos. [83] ¶ 10; [86] ¶ 13; [98] ¶ 13; [101] ¶ 13. [9] No acknowledgment letter was ever sent to Walid regarding the 2013 Beneficiary Form. ECF Nos. [85] ¶ 10; [86] ¶ 13; [92] ¶ 13; [101] ¶ 13.

### F. The Claims to the Policy Proceeds

Walid passed away on January 18, 2016. *See* Death Certificate, ECF Nos. [85-5], [90-5], [92-5]; *see also* ECF Nos. [86] ¶ 14; [98] ¶ 14; [101] ¶ 14. On March 7, 2016, Nawal filed a claim with Reliastar for the proceeds from the Policy. ECF Nos. [9-4], [22-4], and [54-6]; *see also* ECF Nos. [86] ¶ 15 and [101] ¶ 15.

Reliastar searched its records for the operative beneficiary forms, but was only able to locate the 1996 Enrollment Form. ECF No. [52-1], Affidavit of Mary Moerbitz ¶ 5. As

---

[9] Third Party Defendants attempt to dispute Reliastar's assertion that it never processed the 2013 Beneficiary Form and that it takes no position on its validity (*see e.g.*, Moerbitz Tr. at 135–37; ECF No. [101] ¶ 20) by arguing a hypothetical statement. Principally, Third Party Defendants argue that if Reliastar had processed the 2013 Beneficiary Form, Reliastar would have rejected it because the thumbprint would not be accepted as a valid signature. ECF No. [82] ¶¶ 17–19. This assertion is purely speculative and contradicted by the record evidence.

Moerbitz testified, "[t]he Reliastar claim adjuster did not search the WISE [document management] system when reviewing the claim submission. A November 28, 2006 Beneficiary Designation Form and an August 24, 2013 Beneficiary Form were housed on that system and were not located while the competing claims were considered. Instead, the adjuster only checked the Oracle IPM system and imaging systems for change of beneficiary forms, located the 1996 beneficiary designation form and believed in good faith that she had exhausted all sources." *Id.* Thus, due to "human error," Reliastar located neither the 2006 Beneficiary Form nor the 2013 Beneficiary Form. *Id.*; *see also* Moerbitz Tr. at 41; ECF Nos. [86] ¶ 16, 18; [98] ¶ 16; [101] ¶ 16. Instead, Reliastar believed that it received the 2013 Beneficiary Form for the first time as an attachment to Nawal's claim for the Policy proceeds after Walid's death. Since as a policy, Reliastar does not consider beneficiary designation forms received after the insured's death, ECF Nos. [86] ¶ 17; [98] ¶ 17; [101] ¶ 17, when Reliastar reviewed the claim it only considered the 2013 Beneficiary Form as a document first received after Walid's death:

> Q: [T]his beneficiary form wasn't considered by the insurance company, because it though it didn't have it in its possession before?
>
> A: Yes.
>
> …
>
> Q: Was there a review done in 2017 or 2016 when you received this beneficiary designation form, was there a review of that designation form done at that time to determine if it was in good order or not?
>
> A: No.
>
> Q: Why not?
>
> A: Because it was received after the death.

Moerbitz Tr. at 120–21; *see also* ECF Nos. [86] ¶ 18; [98] ¶ 18; [101] ¶ 18–19.[10]

On June 30 2016, Reliastar denied Nawal's claim, finding "[a]ccording to the information we have, you are not named as a beneficiary." ECF Nos. [86-6], [90-6], [92-6] ("June 30, 2016 Letter"); *see also* [86] ¶ 19; [98] ¶ 22; [101] ¶ 21. Nawal appealed the decision via letter dated August 26, 2016. ECF Nos. [86-7], [90-7], [92-7]; *see also* ECF Nos. [86] ¶ 21; [101] ¶ 21, 27.[11] No administrative appeal was processed. ECF Nos. [86] ¶ 21; [98] ¶ 21; [101] ¶ 21. Instead, Reliastar forwarded the claim directly to its legal department. *Id.*

Meanwhile, on March 22, 2017, Labeeb Hassoun, the contingent beneficiary under the 1996 Enrollment Form and former party to this action, filed a claim with Reliastar for the Policy Proceeds. ECF Nos. [9-5], [22-5], [54-7]. On November 30, 2016, Reliastar send a letter to Plaintiff confirming its denial of her claim, and noting that "benefits are payable to the contingent beneficiary, Labeeb Hassoun, brother." ECF Nos. [86-9], [90-9], [92-9] ("November 30, 206 Letter), together with the June 30, 2016 Letter, the "2016 Denial").

During the pendency of the litigation on or around June 28, 2017, Reliastar located both the 2006 and 2013 Beneficiary Forms, and subsequently amended its interpleader action to remove Labeeb and add the Third Party Defendants, apparently disavowing the 2016 Denial which found Labeeb to be the proper beneficiary. ECF Nos. [52-1], Moerbitz Aff. ¶ 6; [52],

---

[10] Third Party Defendants dispute Reliastar's explanation of its own denial of Nawal's claim, asserting the claim was denied because "the 2013 form was not signed, acknowledged or accepted by the insurer." ECF No. [98] ¶ 18.

[11] Third Party Defendants dispute Plaintiff's and Reliastar's explanation of the appeal process stating, in response to this fact: "Disputed. It went to appeal or legal. It was evaluated by the company. Some claims go directly to legal. The claim was denied because the 2013 form was not signed, acknowledged or accepted by the insurer." ECF No. [98] ¶ 21 (citations omitted).

Reliastar's Motion to Join Non-Parties and Amend Scheduling Order; and [56], Reliastar's Notice of Voluntary Dismissal of Third-Party Defendant Labeeb Hassoun. Reliastar now states that it "is unable to determine the person or persons entitled to the Policy's proceeds without hazard to itself and without exposing itself to double or multiple liability from claims by Nawal Hassoun, Labeeb Hassoun, Kayria T. Hassoun and Jameel M. Hassoun," and thus seeks the Court's intervention to determine the proper beneficiary. ECF No. [54] at ¶ 27.

## II.     MOTION FOR DISCHARGE

First, the Court will address Reliastar's Motion for Discharge. ECF No. [77]. In the Motion, Reliastar argues that it is a disinterested stakeholder under 28 U.S.C. § 2361 and thus is entitled to discharge from the action and a permanent injunction against all future actions. ECF No. [77] at 2. Specifically, Reliastar argues that it is entitled to discharge because "[e]ven a cursory review of the Second Amended Complaint evidences that it is practically identical to Reliastar's interpleader action . . . [except that Plaintiff] contends that she is the rightful beneficiary whereas Reliastar affirmatively asserts that it is a disinterested stakeholder, and makes no claim to the proceeds." *Id.* at 5.[12] Reliastar seeks an order discharging it from this action, permanently enjoining the claimants form any future claims against it, and awarding attorney's fees and costs associated with the interpleader action. *Id.*

In Opposition,[13] Nawal argues that the Court should deny the Motion to Discharge because Reliastar is not a disinterested, innocent stakeholder. ECF No. [88] at 1–2. Rather,

---

[12] The Court notes that in its moving brief, ECF No. [77], Reliastar does not cite a single case from this Circuit in support of its motion and relies exclusively on persuasive authority.

[13] On reply, Reliastar argues that the Court should not credit Nawal's Opposition because it was untimely filed. Because the Court finds that the record does not support discharge, it need not

Reliastar's own recordkeeping failure contributed to the need for this litigation. *Id.* For the same reasons, Nawal argues that Reliastar is not entitled to attorneys' fees, and that an award of attorneys' fees would be disproportional to the funds deposited in the registry. *Id.* at 7–8. In addition, Nawal argues in opposition that discharge is inappropriate because Reliastar may be independently liable for attorneys' fees to the Plaintiff, *id.* at 11–12, and that an injunction is inappropriate because Reliastar has failed to meet the high burden required, *id.* at 12–14.

As the Eleventh Circuit has observed: "Interpleader is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner." *In re Mandalay Shores Co-op. Hous. Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994). "A successful interpleader suit results in the entry of a discharge judgment on behalf of the stakeholder; once the stakeholder turns the asset over to the registry of the court, all legal obligations to the asset's claimants are satisfied." *Id.* An action in interpleader "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1704, at 540 (3d ed. 2001). Although a successful interpleader action typically results in the court discharging the stakeholder, discharge is improper where the stakeholder is itself alleged to be independently liable to the defendants. *See, e.g.*, *Am. Gen. Life Ins. Co. v. Logus Mfg. Corp.*, No. 10-81244-CIV, 2011 WL 13117083, at *1 (S.D. Fla. May 2, 2011) (citing

---

address this argument. ECF No. [89].

*re Mandalay Shores*, 21 F.3d at 383 and *Am. Gen. Life Ins. Co. v. Soule*, 2008 WL 4790654, *3 (M.D. Fla. Oct. 27, 2008)).

While the operative pleadings only seek a declaratory judgment, based on the record currently before the Court discharge is improper. Indeed, "it is possible that the [Reliastar] may be liable to at least some of the [parties]. This is not an instance where an innocent stakeholder unwittingly comes into possession of disputed funds." *Alan L. Frank Law Assocs. P.C. v. OOO RM Invest*, No. 16-22484-CIV, 2016 WL 9383519, at *4 (S.D. Fla. Dec. 1, 2016), *report and recommendation adopted*, No. 16-22484-CIV, 2016 WL 9348095 (S.D. Fla. Dec. 16, 2016); *Campbell v. N. Am. Co. for Life & Health Ins.*, No. 3:04CV1118 JTEM, 2007 WL 2209249, at *3 (M.D. Fla. July 30, 2007) (finding insurance company was not a disinterested stakeholder under Florida law because it initiated the interpleader action for its own protection in response to a breach of contract action originally filed in state court).

While Reliastar argues on reply that "regardless of Reliastar's handling of Plaintiff's claim," which included its failure to locate the two change of beneficiary forms and the 2016 Denial without consideration of either of those forms in its possession, Reliastar still has filed a claim in interpleader. ECF No. [89] at 3–4. That may be so. But given Reliastar's conduct here—and its consequential effect on the competing beneficiary forms—Reliastar cannot hide behind a claim that it is an "innocent stakeholder." *See* ECF No. [52-1], Affidavit of Mary Moerbitz ¶ 5. Accordingly, Reliastar's motion seeking discharge from the action and a permanent injunction against all future actions is denied.

Reliastar also moves for an order awarding it an unspecified amount of attorneys' fees. "Attorneys' fees are justified in many interpleader actions for several reasons," including that "an interpleader action often yields a cost-efficient resolution of a dispute in a single forum,

rather than multiplicitous, piecemeal litigation[;] . . . the stakeholder in the asset often comes by the asset innocently and in no way provokes the dispute among the claimants[; and the ] fees for the stakeholder typically are quite minor and therefore do not greatly diminish the value of the asset." *Mandalay Shores*, 21 F.3d at 383. Because the Court has found that discharge is not appropriate, Reliastar is not "an innocent stakeholder entitled to attorneys' fees." *Id.* Reliastar's request for attorneys' fees is denied.

### III. MOTIONS TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," granting courts broad discretion in making this determination. Fed. R. Civ. P. 12(f); *see also Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318–19 (S.D. Fla. 2005); *Williams v. Eckerd Family Youth Alternative*, 908 F. Supp. 908, 910 (M.D. Fla. 1995). Under Rule 12(f), "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010) (internal quotation and citation omitted); *see also Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14-CIV-60885, 2015 WL 1566398, at *1 (S.D. Fla. Apr. 8, 2015) (same). Courts have broad discretion in considering a motion to strike under Federal Rule of Civil Procedure 12(f). *Sakolsky v. Rubin Mem'l Chapel, LLC.*, No. 07-80354-CIV, 2007 WL 3197530, at *1 (S.D. Fla. Oct. 26, 2007). However, Rule 12(f) motions to strike are considered drastic, granted sparingly and often disfavored. *Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1327 (S.D. Fla. 2011).

Reliastar and the Third Party Defendants both move to strike certain portions of Plaintiff's Motion for Summary Judgment. *See* ECF Nos. [96] and [104]. The Third Party Defendants move to strike Plaintiff's Statement of Material Facts, ECF No. [86], and its attached exhibits, apparently in their entirety. *See* ECF No. [96] at 1. Reliastar moves to strike three affidavits attached to Plaintiff's Statement of Material Facts, ECF Nos. [86-11], [86-12], and [86-13]. Reliastar argues that the Court should strike these affidavits because they contain hearsay and because they contain information outside the administrative record. Reliastar claims this contravenes the standard for review articulated in *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011), which requires a deferential standard applied in claims brought under ERISA seeking review of an administrative decision denying benefits.

The Third Party Defendants, in turn, make several arguments in their motion to strike. *See* ECF No. [96]. First, similar to Reliastar, they argue that under the administrative review standard articulated in *Blankenship* and its progeny, the Court must strike any facts that were "not been part of the administrative record when the decision was made," *id.* ¶¶ 1–2. Third Party Defendants also argue the affidavits attached to Plaintiff's Motion for Summary Judgment, ECF Nos. [86-11], [86-12], and [86-13], contain "immaterial facts regarding intent" and must be stricken, *id.* ¶ 3; that certain paragraphs of Plaintiff's Statement of Material Facts contain inadmissible evidence and must be stricken, *id.* ¶ 4; that certain paragraphs contain more than one fact per paragraph, "do not have separate numbering," and/or do not have pinpoint line numbers and must be stricken, *id.* ¶¶ 5–6; and that Plaintiff failed to file an index of exhibits and therefore the exhibits must be stricken, *id.* ¶¶ 8–9.

All of these arguments are without merit. First, as more fully explained below in the Court's analysis of the Motions for Summary Judgment, *infra*, the framework set forth in

*Blankenship* does not apply here. To the extent Reliastar had the discretionary authority to determine plan benefits, here it has explicitly declined to do so and instead has filed its action in interpleader seeking judicial determination of the rightful beneficiary. *See* Moerbitz Tr. at 83 (Q: ReliaStar does not have a position one way or the other as to whether the designation form that was submitted in 2013 is sufficient, right? A: Correct). While Reliastar and Third Party Defendants urge the Court to limit its review to the administrative record, Reliastar has stated not only that the administrative record used to render its decision denying Nawal's claim was incorrect due to administrative errors, *see* Moerbitz Tr. at 40–41, but also that it has declined to take a position on the beneficiary forms, *see id.* at 82–83, 120, 152. On both those bases, neither Reliastar nor the Third Party Defendants are entitled to review under *Blankenship*, and accordingly the record.

Reliastar's Motion to Strike Plaintiff's Supporting Affidavits based on hearsay is also misplaced. "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (citing *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). "Nevertheless, a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Jones*, 683 F.3d at 1293–94 (quoting *Macuba v. Deboer*, 193 F.3d. at 1323 (internal quotation marks omitted); *see also* ECF No. [104] at 5–6. "The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." *Jones*, 683 F.3d at 1294 (citing *Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996). Reliastar argues that the affidavits, each of which is based on the personal knowledge of the affiant, should be stricken. However, it asserts no plausible arguments as to why the affiants, including Plaintiff

herself, will not be available at trial, or why another hearsay exception, such as the state of mind exception as argued by Plaintiff in opposition to the motions, would not apply to the statements regarding Walid's intent. *See* ECF No. [109] at 6–7. The Court denies the motion to the extent Reliastar seeks striking of certain testimony based on hearsay.

Finally, Third Party Defendants' arguments that the Court should strike Plaintiff's Statement of Material Facts and its exhibits because Plaintiff failed to comply with the Local Rules and the Court's Orders regarding certain numbering and indexing requirements are, at best, petty. While the Court reserves the right to enter appropriate orders or sanctions for failure to comply with its Orders or the Local Rules, a motion to strike is an inappropriate vehicle to remedy the noncompliance argued here.

Accordingly, the Motions to Strike, ECF Nos. [96] and [104], are denied. The Court will therefore review the record consistent with Federal Rule of Civil Procedure 56 in addressing the Motions for Summary Judgment.

## IV.     THE MOTIONS FOR SUMMARY JUDGMENT

### A.  Legal Standard

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. Pro. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits,

or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247–48).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party has met its burden, the non-movant must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. Pro. 56(c)(1). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). A movant must present evidence demonstrating that it can establish the basic elements of his claim. *Celotex*, 477 U.S. at 322. After the nonmoving party has responded to the motion for summary judgment, a court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Thus, "[a] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' "*Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 249) (emphasis added).

As before the Court here, "cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist." *Georgia State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345–46 (11th Cir.

2015). In particular, where "the parties respond[] to each respective summary judgment motion with disputes as to the 'undisputed' facts, add[] 'material facts' of their own, and then repl[y] with subsequent objections to the other party's additional facts," the mere filing of cross motions for summary judgment is not conclusive. *Id.* Thus, where the parties disagree as to the facts, summary judgment cannot be entered unless one of the parties meets its burden of demonstrating that "there is no dispute as to any material facts with the evidence and all inferences drawn therefrom viewed in the light most favorable" to the other party. *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

### B. The Parties' Summary Judgment Motions

Before the Court are three motions for summary judgment, ECF Nos. [84], [82], [87] (together, "Summary Judgment Motions"). Because the memoranda of law filed in support of and in opposition to the Summary Judgment Motions contain overlapping arguments, and Reliastar filed a single brief both in opposition to Plaintiff's Motion for Summary Judgment and in reply in support of its own Motion for Summary Judgment, the Court will briefly outline the arguments in each motion before addressing the Summary Judgment Motions.

The Third Party Defendants move for summary judgment seeking, *inter alia*, an order "upholding the administrator's decision that the proceeds be paid according to the 2006 Beneficiary Designation." ECF No. [82] at 9. The Third Party Defendants argue that the Court should apply *Blankenship* and affirm Reliastar's 2016 Denial. [14] In support, they argue that they prevail on each step of the *Blankenship* framework. *Id.*

_____

[14] The Court notes that, on the record before it, there is no benefits decision by Reliastar which found that the "the proceeds be paid according to the 2006 Beneficiary Designation." ECF No. [82] at 9. The only administrative decision in the record before it is the 2016 Denial, which

22

In opposition, Plaintiff argues that the *Blankenship* standard does not apply because Reliastar never approved or rejected the 2013 Beneficiary Form, ECF No. [90] at 2, 6–11. Further, Plaintiff argues that the Court should reject Third Party Defendants' arguments that the 2013 Beneficiary Form is invalid, and instead urges the Court to find that the 2013 Beneficiary Form controls. *Id.* at 11–18. Plaintiff also argues that the Court may apply the substantial compliance doctrine to evaluate whether the 2013 Beneficiary Form controls. *Id.* at 19–20.

Reliastar has also moved for summary judgment seeking an order in interpleader affirming the 2016 Denial. ECF No. [84] at 2. In support, Reliastar argues that the Court should grant summary judgment in Reliastar's favor because the 2013 Beneficiary Form does not strictly comply with the Policy requirements for a change of beneficiary. *Id.* at 2–4. In particular, Reliastar states that "2013 Beneficiary Designation Form was not signed as required by the plan and the unambiguous language of the form; rather it contained what appeared to be a thumbprint with no indicia of authentication." *Id.* at 7. Reliastar further argues the Court should affirm the 2016 Denial under *Blankenship* and grant summary judgment in Reliastar's favor. *Id.* at 4–10.

In response, Plaintiff argues, *inter alia*, that Reliastar's "substantive analysis of the issues in this case is flawed" because Reliastar seeks an order affirming the 2016 Denial, while it simultaneously no longer contends that the 1996 Enrollment Form controls and has dismissed Labeeb from this case. ECF No. [93] at 3. Plaintiff further argues that the *Blankenship* standard

---

denied Nawal's claim and found that Labeeb is the proper beneficiary pursuant to the 1996 Enrollment Form. *See* 2016 Denial, ECF Nos. [86-6] and [86-9]. Third Party Defendants have not cited to any documentary or testimonial evidence of an affirmative decision by Reliastar that the Policy proceeds should be paid according to the *2006 Beneficiary Form.*

does not apply, and even if it did apply, Reliastar's decision was *de novo* "wrong" and unreasonable, precluding summary judgment in Reliastar's favor. *Id.* at 4–12. Plaintiff also argues that the Court should find that the 2013 Beneficiary Form properly designated Nawal as the beneficiary because it was signed with Walid's thumbprint and no affirmative approval was required by Reliastar to effectuate the change in beneficiary, and even if not, that Walid substantially complied with the Policy's requirements. *Id.* 12–17.

Similar to its opposition to Reliastar's Motion for Summary Judgment, Plaintiff argues in its own Motion for Summary Judgment that the *Blankenship* standard does not apply because neither the insurer nor the administrator has made a final determination as to the correct beneficiary under the policy. ECF No. [87] at 4–8. Plaintiff further argues that under the standard articulated in Federal Rule of Civil Procedure 56, Plaintiff has demonstrated that Walid successfully designated her as the beneficiary because the 2013 Beneficiary Form was signed with a thumbprint, a valid signature under state law, and because Walid substantially complied with the requirements of the Policy to change a beneficiary. *Id.* at 8–15.

In response, Reliastar argues that Plaintiff fails to follow certain procedural requirements, fails to show why summary judgment should not be granted on Reliastar's interpleader complaint, and fails to show why *Blankenship* does not apply. *See* ECF No. [102] at 3–11. In response to Plaintiff's arguments regarding the efficacy of the thumbprint, Reliastar argues that Plaintiff cannot demonstrate that the 2013 Beneficiary Form was signed by Walid because "there is nothing on the 2013 Beneficiary Designation Form indicating or evidencing that the decedent voluntarily placed (or was assisted in placing) his thumbprint on the document with the intent to change beneficiaries. There is no admissible evidence that the decedent had even adopted his thumbprint as his signature on legal documents in 2013. Absent evidence of the decedent's

intent, the case law clearly provides that a mark cannot constitute a signature on a document that conveys property under Florida law." ECF No. [102] at 17.

### C. Applicable Law

#### a. The Blankenship Standard Does Not Apply

Both Reliastar and Third Party Defendants urge this Court to apply the deferential standard articulated in *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350 (11th Cir. 2011) used to interpret a plan administrator's ERISA benefits decision to this case. ECF Nos. [82] ¶ 5; [84] at 4–5. Under *Blankenship*, the Court applies the following framework to review an administrator's benefits decision under ERISA:

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355. While the Policy is governed by ERISA, Plaintiff's claim in this case is not a claim regarding a *plan administrator's decision*. The only administrative decision rendered by Reliastar to which the Court could apply *Blankenship* is the 2016 Denial, which denied Nawal's claim and found that Labeeb is the proper beneficiary pursuant to the 1996 Enrollment Form. *See* ECF Nos. [86-6] and [86-9]. However, as noted above, the weight of the record before the Court indicates that Reliastar has effectively abandoned that administrative decision because it dismissed Labeeb from this case after it located the 2006 and 2013 Beneficiary Forms and determined that the 1996 Enrollment Form does not control.

Moreover, while Reliastar muddies the waters by arguing in its Summary Judgment Motion that the Court should affirm the June 2016 Denial, the record is replete with statements by Reliastar that it has not rendered a decision on the 2013 Beneficiary Form or on the proper beneficiary of the Policy proceeds. In fact, that position is the entire basis of Reliastar's Interpleader Complaint. *Cf.* ECF Nos. [84] at 11 ("[T]his Court should grant ReliaStar's Motion for Summary Judgment, because its denial of Nawal Hassoun's claim was not "*de novo* wrong.") *with* [101] ¶ 19–20 ("ReliaStar has not made a determination as to the validity of the 2013 Beneficiary Designation Form. . . . [Reliastar] admit[s] that [it] has not taken a position in this litigation as to whether the thumbprint that purports to be on the 2013 Beneficiary Designation Form constitutes a signature, because it has deposited the funds into the Court Registry, and therefore, is a disinterested stakeholder."); [54] at ¶ 27 ("ReliaStar is unable to determine the person or persons entitled to the Policy's proceeds without hazard to itself and without exposing itself to double or multiple liability from claims by Nawal Hassoun, Labeeb Hassoun, Kayria T. Hassoun and Jameel M. Hassoun."); ECF No. [86-8] Interrogatory Response 7 ("ReliaStar is a disinterested stakeholder and has not and will not make a determination of the 'proper

beneficiary' of the Policy. ReliaStar did not assess the validity of the 2013 Beneficiary Designation or confirm the intention of the insured."). The Court thus looks skeptically at the application of *Blankenship* to a decision which has already been disavowed by the insurer.

Further, the cases cited by Reliastar and Third Party Defendants apply *Blankenship* to cases—unlike here—where the insurer seeks to defend its administrative decision. *See, e.g.*, *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1194 (11th Cir. 2010) (applying *Blakenship* to wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B)); *Lee v. BellSouth Telecommunications, Inc.*, 318 F. App'x 829, 835 (11th Cir. 2009) (finding denial of benefits arbitrary and capricious); *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 666 (11th Cir. 2014) (reversing and remanding denial of benefits because insurer failed to consider SSA record in denying disability insurance); *Dunn v. Cox*, 560 F. Supp. 2d 1247, 1251 (M.D. Fla. 2008) (noting that at trial, the parties stipulated to the introduction of evidence outside the administrative record). These cases thus provide little support for their argument that the Court should look to this framework to review the 2016 Denial.

Accordingly, the Court declines to apply *Blankenship*. To the extent that Reliastar and Third Party Defendants move for summary judgment based on this deferential administrative standard, the motions for summary judgment are denied. The Court will assess Reliastar's and the Third Party Defendants' remaining argument using the standard found in Federal Rule of Civil Procedure 56.

### b. Federal Common Law Applies

While the Court has declined to apply *Blankenship*, it still must determine what law applies to the claims in this case. In this Circuit, a benefit plan under ERISA is governed by the language of the statute. *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1195 (11th Cir.

1991). However, in enacting ERISA, Congress contemplated that, where ERISA was silent, "[t]he federal courts are to develop a federal common law of rights and obligations under ERISA-regulated plans." *Arnold v. Life Ins. Co. of N. Am.*, 894 F.2d 1566, 1567 (11th Cir. 1990) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S. Ct. 948, 954, 103 L. Ed. 2d 80 (1989)). Here, "although [ERISA] is a comprehensive and reticulated statute," *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir. 1998) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980) (internal quotation marks omitted)), the statue appears to be silent on the signature and approval requirements to change a beneficiary of the Policy. Further, neither the parties nor the Court have located authority applying federal common law under ERISA to the questions at issue here.

"[W]hen crafting a body of common law, federal courts may look to state law as a model because of the states' greater experience in interpreting insurance contracts and resolving coverage disputes." *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir. 1998) (per curiam). "To decide whether a particular rule should become part of ERISA's common law, courts must examine whether the rule, if adopted, would further ERISA's scheme and goals. ERISA has two central goals: (1) protection of the interests of employees and their beneficiaries in employee benefit plans; and (2) uniformity in the administration of employee benefit plans." *Id.* (citing *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986) and *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 570–71 (11th Cir. 1994)) (holding that the negative presumption against suicide and affirmative presumption of accidental death as applied by the district court fulfilled these purposes). Having reviewed the common law contract principles applied in Florida, the Court finds that their application furthers ERISA's scheme and goals and will use Florida common law to guide its analysis here.

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, No. 3:05-cv-850-J-32TEM, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)). As with all contracts, the interpretation of an insurance contract is a question of law to be determined by the court. *Id.*; *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003) (stating that whether an ambiguity exists in a contract is a matter of law).

Further, "[u]nder Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). If the terms of an insurance contract are "clear and unambiguous," Florida law requires a court to "interpret the contract in accordance with its plain meaning and, unless an ambiguity exists, a court should not resort to outside evidence or the complex rules of construction to construe the contract." *Key v. Allstate Ins. Co.,* 90 F.3d 1546, 1548–49 (11th Cir.1996) (citing *Rigel v. National Casualty Co.*, 76 So.2d 285, 286 (Fla.1954)); *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 328 F. Supp. 2d 1319, 1338 (S.D. Fla. 2004)

The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the

parties."). "If, and only if, a contract is ambiguous should the court construe it in order to determine the parties' intent. *Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 954–55 (Fla. 2013) (citing *Se. Fire Ins. Co. v. Lehrman*, 443 So.2d 408, 408–09 (Fla. 4th DCA 1984)). "If all available construction tools, including extrinsic evidence, fail to resolve the ambiguity, only then is the contract construed against the drafter, under the theory that 'having chosen the language employed and being responsible for the alleged uncertainty and ambiguity,' the drafter 'must suffer the result of having such [ambiguous] language construed against [it].' " *Id.* (collecting cases).

### D. The Thumbprint Is a Valid Signature

In its Motion for Summary Judgment and in opposition to Third Party Defendants' Motion for Summary Judgment, Plaintiff argues that the Court should apply common law to determine whether Walid validly executed the 2013 Beneficiary Form with his thumbprint because ERISA is silent on the use of a thumbprint as a signature. ECF Nos. [87] at 10–11 and [91] at 14–16. Applying common law contract principles, Plaintiff argues that the thumbprint is a valid signature, and based on the record before the Court, the 2013 Beneficiary Form was properly executed by Walid. *Id.*

Third Party Defendants argue in their Motion for Summary Judgment and in opposition to Plaintiffs' Motion for Summary Judgment that the Court should not apply common law contract principles. However, they do not cite to any cases to support this argument. *See* ECF No. [97] ¶ 22. They further argue that the authority cited by Plaintiff is inapplicable because it requires that the symbol used in lieu of a written signature be adopted with intention, and no such evidence exists here. *Id.* ¶¶ 29–30. Critically, the Third Party Defendants do not address the Hamed, Nayef, and Nawal affidavits. *See id.*

Reliastar does not take a position on whether a thumbprint may constitute a valid signature. *See e.g.*, ECF No. [86-8], Interrogatory Response 4 ("ReliaStar does not take a position on the legal significance of the thumbprint on the 2013 Beneficiary Designation"); ECF No. [101] ¶ 20 ([Reliastar] admit[s] that [it] has not taken a position in this litigation as to whether the thumbprint that purports to be on the 2013 Beneficiary Designation Form constitutes a signature . . ."); Moerbitz Tr. at 156 ("Q: Now, it's my understand from your testimony that the company doesn't -- the insurance company doesn't take a position one way or the other whether a thumbprint could be constituted as a proper signature, right? A: Correct."); ECF No. [86-8], Interrogatory Responses 4 & 5 ("ReliaStar does not take a position on the legal significance of the thumbprint on the 2013 Beneficiary Designation. . . . ReliaStar docs not contend that the 2013 Beneficiary Designation Form is invalid or does not effectively change beneficiaries.").

Neither the parties nor the Court have located authority applying federal common law to determine the effect of a thumbprint or other mark on an ERISA beneficiary change form. However, review of Florida common law as well as the persuasive authority cited indicates that a thumbprint or other mark may be recognized under certain circumstances as a valid signature. In *In re Williams' Estate,* the Supreme Court of Florida held that a testator's mark, an "X", satisfied the statutory requirement that the will be "signed" by the testator. *In re Williams' Estate*, 182 So. 2d 10, 12 (Fla. 1965). There, the Court observed: "The great majority of the courts which have dealt with cases like these involving similar statutes hold as we do here, that a mark made by the testator at the proper place on his will with the intent that it constitute his signature and evidence his assent to the will is sufficient to satisfy the statutory requirement that he 'sign' his will." *Id.*

Also instructive is the definition of signature found in 1 U.S.C. 1 which states: "In

determining the meaning of any Act of Congress, unless the context indicates otherwise . . . 'signature' or 'subscription' includes a mark when the person making the same intended it as such." 1 U.S.C.A. § 1. The Uniform Commercial Code incorporates a similar definition: " 'Signed' includes using any symbol executed or adopted with present intention to adopt or accept a writing." U.C.C. § 1-201(b)(37). Courts in other circuits have applied both definitions to change of beneficiary forms. *See, e.g.*, *Bonner v. Metro. Life Ins. Co.*, 621 F.3d 530, 535 (6th Cir. 2010) (holing that "the definition of "signature" found in 1 U.S.C. § 1 applies when assessing whether a beneficiary designation is "signed" for purposes of FEGLIA"). As the RESTATEMENT (SECOND) OF CONTRACTS summarizes: "The signature to a memorandum may be any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer." *Id.* § 134. Comment a. elaborates that "[t]he traditional form of signature is of course the name of the signer, handwritten in ink. But initials, thumbprint or an arbitrary code sign may also be used." *Id.*

Application of these principles to change of beneficiary forms would meet ERISA's twin aims by protecting both insureds and beneficiaries, but also preserving uniform application of the statute. Distilling this authority, a mark is sufficient to constitute a signature for purposes of a change of beneficiary form if the document contains (1) a thumbprint, symbol, or other mark; (2) made by the insured; (3) in the proper place for signature; (4) with the actual or apparent intent to authenticate the document. If factual issues exist regarding the intent of the insured, summary judgment is inappropriate. *Bonner*, 621 F.3d at 534 (citing *Metro. Life Ins. Co. v. Grant*, No. 96–136–Civ–Oc–10B, slip. op. (M.D. Fla. July 7, 1997)).

The Court finds that the thumbprint here constitutes a valid signature. Taking the facts in the light most favorable to Reliastar and Third Party Defendants on Plaintiff's Motion for

Summary Judgment, the undisputed evidence demonstrates that Walid placed his thumbprint on the 2013 Beneficiary Form with the intent to sign it. *See* ECF No. [86-12]. Plaintiff has introduced documentary evidence of the mark in the proper place for a signature and testimonial evidence through an affidavit that the mark was made by the insured with the intent for the mark to serve as his signature. *Id.* Plaintiff has further introduced evidence that Walid used his thumbprint because he was unable to move his hands and arms as a result of ALS. *See* ECF Nos. [86-11], [86-12], [86-13]. Thus, the record evidence is undisputed that the thumbprint constitutes a valid signature.[15]

Neither Reliastar nor Third Party Defendants have introduced any evidence to create an issue of fact regarding the thumbprint or Walid's intent. To the extent that they argue to the contrary, it is only with conclusory statements questioning whether the mark is a thumbprint at all, whether the mark was made by Walid, and whether the mark was made voluntarily. For example, in its Statement of Material Facts in Opposition to Plaintiff's Statement of Material Facts, Reliastar denies that Walid's thumbprint appears on the document or that the mark on the 2013 Beneficiary Form can be identified as a thumbprint. *See* ECF No. [101] ¶ 13 ("Denied that the corporate representative admitted it was a thumbprint"); Moerbitz Tr. at 140–41 ("I don't know if that's a thumbprint"). However, Reliastar also states multiple times in the record— including in its same Statement of Material Facts in Opposition to Plaintiff's Statement of Material Facts—that it has made no determination regarding the "thumbprint" or the validity of the 2013 Beneficiary Form. *See e.g.*, ECF No. [101] ¶ 20; Moerbitz Tr. at 137, 156; ECF No.

---

[15] Because the Court finds that the 2013 Beneficiary Form was signed per the Policy requirements, the Court need not address Plaintiff's arguments on substantial compliance.

[86-8].

Similarly, Third Party Defendants state that the 2013 Beneficiary Form was "unsigned," but offer no record evidence to dispute that the mark found on the 2013 Beneficiary Form is not Walid's thumbprint or was not made by him intentionally. ECF No. [83] ¶ 8. Third Party Defendants state that "Plaintiff has disclosed no experts in fingerprint analysis to even say that the finger print was the owner's," *id.* ¶ 15, but ignore the statements in the Nayef, Hamed, and Nawal Affidavits based on personal knowledge that Walid used his thumbprint to sign the 2013 Beneficiary Form and that Walid used his thumbprint to sign legal documents. *See* ECF Nos. [86-11], [86-12], [86-13].

Finally, both Reliastar and Third Party Defendants argue that the evidence produced by Plaintiff in support of her Motion for Summary Judgment is hearsay, and thus cannot be considered by the Court. However, as already explained above, as is permitted on summary judgment, the Court may rely upon the facts in the Nayef, Hamed, and Nawal Affidavits that can be reduced to admissible evidence.

### E. Reliastar's Approval of the Beneficiary Is Permissive

Having found that the 2013 Beneficiary Form was validly executed, the Court now turns to whether Reliastar was required to affirmatively approve the executed 2013 Beneficiary Form for it to take effect. The Policy provides that "[a]ll requests are *subject to our approval*. A change will take effect as of the date it is signed but will not affect any payment we make or action we take before receiving your notice." *See, e.g.*, ECF Nos. [54-1] at 11. Reliastar and Third Party Defendants argue that this language requires that Reliastar affirmatively approve any change of beneficiary form. *See, e.g.*, ECF No. [82] ¶ 6 ("In this case, there is a two-step process to effectuate a change in beneficiaries. First, a signed, completed, and dated Beneficiary

Designation Form needs to be received by Reliastar. Next according to the Plan documents, the form must be accepted and acknowledged by Reliastar. In this case, neither step was reached for the 2013 Beneficiary Designation."). Plaintiff argues that the language is permissive, allowing Reliastar to reject the form but not requiring affirmative approval. ECF No. [87] at 8. Plaintiff further argues that because there is no specified time frame for approval, Reliastar could approve the form at any time, including when it discovered three years after receipt that it had logged but not processed the 2013 Beneficiary Form. *Id.* at 6.

As the Supreme Court of Florida has observed, "subject to" is defined "as 'contingent on or under the influence of some *later action* ([e.g.,] the plan is subject to discussion).' " *Smith v. Smith*, 224 So. 3d 740, 747 (Fla. 2017) (quoting *Merriam–Webster's Collegiate Dictionary* 1243 (11th ed. 2014) (emphasis in original)). "According to Webster's International Dictionary, 'subject' is defined as 'likely to be conditioned, affected, or modified in some indicated way: having a contingent relation to something and usu[ally] dependent on such relation for final form, validity, or significance.' " *Id.* (quoting *Webster's Third New International Dictionary* 2275 (1993)). The words "subject to" have been interpreted under Florida law to have both permissive and obligatory meanings. *Cf. Stuart v. Franklin Life Ins. Co.*, 165 F.2d 965, 967 (5th Cir. 1948) (finding "the use of the words 'and subject further to' indicates not a suggestion but a requirement") *and Dodge City, Inc. v. Byrne*, 693 So. 2d 1033, 1035 (Fla. 2d DCA 1997) (finding "subject to" language which required dealership to find financing for car was a condition precedent and allowed dealership to repossess the car when no financing was secured) *with Smith v. Smith*, 224 So. 3d 740, 747 (Fla. 2017) (In the context of section 744.3215(2)(a), "the right to marry is subject to court approval" means that the ward's right to marry is contingent on court approval, though that approval may come later in time, such as after

the marriage ceremony.")  Since the application of the Florida Supreme Court's principles of contract construction—both those noted above and detailed further below—are consistent with ERISA's scheme and goals, the Court will apply them here.

In the Policy, the words "subject to" appear to reflect Reliastar's reservation of the right to approve beneficiary designations.  Read in conjunction with the second sentence which states that "[a] change will take effect as of the date it is signed but will not affect any payment we make or action we take before receiving your notice," it is unclear whether this reservation requires the affirmative approval of each change of beneficiary form—contemporaneous or otherwise—or whether it simply allows Reliastar to reject a beneficiary form should it so choose.  While on the one hand the second sentence seems superfluous if approval is required in all instances, on the other, the second sentence could be read to simply reflect the administrative reality that while the change in beneficiary is effective immediately, because of required processing—and approval— such changes cannot be reflected until received.

While this Court has not located a case within this District interpreting similar language, the Seventh Circuit has had occasion to do so.  In *Minnesota Life Ins. Co. v. Kagan*, 724 F.3d 843, 851 (7th Cir. 2013), the insured did not specify a beneficiary for the life insurance policy in question at the time he enrolled, and Minnesota Life Insurance Company had no record of any change of beneficiary at the time of the insureds death.  Under the terms of the policy—like Walid's policy—the proceeds would first pass directly to the surviving spouse of the insured where no beneficiary was specified.  However, the insureds' three children located a beneficiary form after the insureds' death which named them as beneficiaries.  Like Walid's policy, this policy in *Kagan* stated: "[a] request to add or change a beneficiary must be made in writing. All requests are subject to our approval. A change will take effect as of the date it is signed, but will

not affect any payment we make or action we take before receiving an insured's notice." *Id.* at 848.

In reviewing the language, the Seventh Circuit agreed with the District Court's observation that "[t]he terms of the [] policy . . . are hardly 'a model of clarity.' " *Id.* at 850. Reviewing the contract language, the Seventh Circuit observed.

> [T]he children do seem to have a point when the phrase, "A change will take effect as of the date it is signed," is viewed in isolation. By itself, this phrase suggests that all a policyholder needs to do is complete and sign the Beneficiary Designation form in order to change beneficiaries. Under this line of reasoning, as long as Minnesota Life receives the form before it is obligated to pay the death benefit to the policyholder's beneficiaries, the company should not care who sent back the Beneficiary Designation form, how they sent it back, or when they sent it back.
>
> . . .
>
> When the phrase, "A change will take effect as of the date it is signed," is read in context of the rest of the policy terms, it becomes clear that a policyholder's responsibilities do not end after completing and signing the Beneficiary Designation form. Rather, the signing of a Beneficiary Designation form is merely the first step in "request[ing] to add or change a beneficiary." And that request is not guaranteed to be successful; on the contrary, the request is "subject to [Minnesota Life's] approval." The juxtaposition of the words "request" and "approval" with the phrase in question indicates that new beneficiaries are not set in stone as soon as a policyholder completes and signs a form. Additional action is required; a policyholder must request Minnesota Life's approval for the desired change. But in the present case, there is no evidence that [the insured] ever attempted to request Minnesota Life's approval.
>
> Thus, after considering the language of the death benefit information section as a whole, we believe that the phrase, "A change will take effect as of the date it is signed," must mean that only an *approved* change will take effect as of the date it is signed. In other words, a change that follows all policy requirements— including the policyholder submitting a request for Minnesota Life's approval—will take effect as of the date it is signed.

*Id.* at 851.  The Court agrees with the analysis in *Kagan* that Walid did not change the Policy beneficiary merely by signing and dating the 2013 Beneficiary Form, without more.  Rather, the Policy required that Reliastar receive the change of beneficiary form in order for the change to be effectuated.  *See*, *e.g.*, ECF No. [54-1] at 3 ("Your beneficiary is the last beneficiary you named, according to the records on file in our Home Office or on file by the Plan Administrator, if applicable").  However, because the insured in *Kagan* never mailed the change of beneficiary form to the insurance company, the *Kagan* Court did not reach the question of whether such a change requires the affirmative approval of the form, or whether the phrase simply reserves the insurer's right to do so.  Because both interpretations are reasonable, the Court finds the term ambiguous.

Under Florida law, "[i]f a written contract is ambiguous or obscure in its terms, so that the contractual intention of the parties cannot be understood from a mere inspection of the instrument, extrinsic evidence of the subject-matter of the contract, of the relations of the parties to each other, and of the facts and circumstances surrounding them when they entered into the contract may be received to enable the court to make a proper interpretation of the instrument." *Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 955 (Fla. 2013).  In particular, under insurance contracts, the Supreme Court of Florida "has recognized the role that extrinsic evidence plays in the construction of ambiguous insurance contracts: Where either general language or particular words or phrases used in insurance contracts are 'ambiguous,' that is, doubtful as to meaning, or, in the light of other facts, reasonably capable of having more than one meaning so that the one applicable to the contract in question cannot be ascertained without outside aid, extrinsic evidence may be introduced to explain the ambiguity." *Id.* (citing

*Friedman*, 56 So.2d at 517). Accordingly the Court will review the extrinsic evidence in the record to construe the ambiguity.

First, the Court examines the change of beneficiary form itself. The 2013 Beneficiary Form states:

> **Instructions:**
>
> **Insured/Owner:**
>
> - Type of print legibly in ink. Sign and date form. Return original and retain a copy for your records.
>
> **Plan Administrator:**
>
> - Send the completed form to the insurance company for approval if any of the following apply. 1) The wording used in the request differs from the examples given on the reverse side; 2) The policy/certificate has been assigned; 3) the previous beneficiary is irrevocable; or 4) The coverage is under an individual policy. Also send copies of all previous beneficiary changes, assignment forms, and a copy of the insured's enrollment form or application. The insurance company will return a copy of the approved form.
>
> - For forms that do not require insurance company approval, retain a copy of the approved form with the insured's records.

ECF No. [54-5] at 1.

Under the plain language of the beneficiary form, approval by Reliastar is not required in all cases. If it were, the directions to the plan administrator would be superfluous—if not nonsensical. Approval is only required in the enumerated circumstances listed on the form. However, none of those circumstances are applicable here. First, the wording on the 2013 Beneficiary Form comports with the required language on the back of the form for designation of an individual beneficiary because both Nawal's and Rima's full legal names are listed. *See* ECF

No. [54-5] at 2.  Second, there is no evidence of assignment of the Policy, and Moerbitz stated in her deposition that the Policy had no irrevocable beneficiaries.  Moerbitz Tr. at 108.  It is undisputed that the Policy is a group, and not individual, policy.  *See* ECF Nos. [9-1], [22-1], [54-1], [86-1], [90-1], and [92-1].

Additional extrinsic evidence supports this conclusion.  While Moerbitz testified that "[a]ll requests are subject to approval—to our approval" (Moerbitz Tr. at 122; *see also* 126, 146, 151), that statement is inconsistent with her subsequent testimony that a change of beneficiary for which was not approved or acknowledged would still "matter."  *Id.* at 146 (Q: So, if you receive a change of beneficiary form but there is neither approval or an acknowledgement, that change of beneficiary form just doesn't matter? . . . A: It does matter but it's not the beneficiary of record.")  Further, Reliastar also stated that it only "attempts to send a letter to the insured within ten (10) days either accepting or denying the form."  ECF No. [101] ¶ 4.  Accordingly, while approval may have been required in some instances and Reliastar may have reserved the right to reject a beneficiary form, no affirmative approval was required under the circumstances here to validate the 2013 Beneficiary Form.

## F.  Conclusion on the Motions for Summary Judgment

Walid complied with all Policy requirements to change his beneficiary designation for the Policy.  Although he could not use his hands to write, he brought a blank beneficiary form to the home of his sister-in-law, who also held power of attorney. Walid then asked her assist him with filling out the 2013 Beneficiary Form per his wishes.  Walid affixed his thumbprint below the signature line with the intent to authenticate the document, and he instructed his sister-in-law to mail the form to the U.S. to be sent to Reliastar.  It is undisputed that Reliastar received the 2013 Beneficiary Form, but due to human error, never processed it.  The 2013 Beneficiary Form

cannot be avoided—and Walid's wishes defeated—simply because of Reliastar's administrative error. Taking all the facts in the light most favorable to non-moving parties Reliastar and the Third Party Defendants, there is no genuine dispute of material fact regarding the signing of the 2013 Beneficiary Form or the approval requirements. Accordingly, the 2013 Beneficiary Form is enforceable and summary judgment is granted in favor the Plaintiff. Reliastar and the Third Party Defendants' Motions for Summary Judgment are denied. The Court has considered the remaining arguments of the parties and finds them without merit.

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.  Reliastar's Motion for Discharge from Action and Permanent Injunction from Future Claims and Incorporated Memorandum of Law, **ECF No. [77],** is **DENIED**;

2.  Reliastar's Motion for Summary Judgment and Memorandum of Law, **ECF No. [84]**, is **DENIED** ;

3.  Third-Party Defendants' Motion for Final Summary Judgment, ECF No. [82], is **DENIED**;

4.  Plaintiff's Cross-Motion for Summary Judgment, **ECF No. [87]** is **GRANTED**;

5.  Third-Party Defendants' Motion to Strike Statement of Material Facts Pursuant to Local Rule 56.1(a), **ECF No. [96]**, is **DENIED**;

6.  Reliastar's Motion to Strike Declarations of Dr. Mustafa Hamed, ECF No. [ 86-11], and Mahiatab Nayef Cheblac, ECF No. [86-12], and Affidavit of Nawal Hassoun, ECF No. [86-13], **ECF No. [104]**, is **DENIED;**

7.     As Count I of Plaintiffs' Second Amended Complaint and Count I of Reliastar's Interpleader Complaint, both of which seek a declaratory judgment regarding the beneficiary under the policy, the Court **DECLARES** that:

a.     The 2013 Beneficiary Form which designates Plaintiff Nawal Hassoun as the primary beneficiary and Rima Hassoun as the contingent beneficiary is valid and enforceable.

b.     Plaintiff Nawal Hassoun is the primary beneficiary of the Policy.

8.     The Court will issue final judgment by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of January, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record